UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARVIN SLATER,

                Petitioner,

        -v.-

WILLIAM F. KEYSER,

                Respondent.

20 Civ. 3012 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

    Petitioner Marvin Slater, who is currently incarcerated at the Sullivan Correctional Facility (the "Facility") in Fallsburg, New York, filed a *pro se* petition for a writ of habeas corpus (the "Petition"), pursuant to 28 U.S.C. § 2254.  Petitioner is serving an indeterminate prison sentence of 30 years to life, following his 1997 convictions in New York State court on two counts of second-degree murder and one count each of first- and second-degree robbery.  He argues that the conditions of his confinement, which expose him to the ongoing Coronavirus Disease 2019 ("COVID-19") pandemic, render his continued confinement unconstitutional.  Petitioner seeks immediate release from custody.

    Respondent William F. Keyser, Superintendent of the Facility, opposes the Petition.  Respondent first claims several procedural deficiencies, including that: (i) Petitioner's challenge to the conditions of his confinement is not cognizable on habeas review, and (ii) Petitioner failed to exhaust his state court remedies.  Separately, Respondent contends that Petitioner fails to establish, on the merits, that the conditions of his confinement violate his federal

constitutional rights.  For the reasons set forth in the remainder of this Opinion, the Petition is dismissed without prejudice.

## BACKGROUND[1]

### A. Factual Background

The facts and procedural history leading up to the Petition are detailed in the state court record that was submitted by Respondent pursuant to court order.  (Dkt. #12).  *See also People* v. *Slater*, 701 N.Y.S.2d 371 (1st Dep't 2000), *leave denied*, 94 N.Y.2d 925 (2000), *reconsideration denied*, 95 N.Y.2d 892 (2000).  In brief, on July 21, 1997, following a jury trial in New York County Supreme Court, Petitioner was convicted of (i) two counts of second-degree murder (intentional and felony murder); and (ii) one count each of first- and second-degree robbery.  (Resp. Opp. 4-5).  He was sentenced to concurrent terms of imprisonment of 25 years to life on each of the murder convictions, which terms were ordered to run consecutively to concurrent 8⅓-to-25-year and 5-to-15-year terms of imprisonment on the robbery counts, respectively.  (*Id.* at 5).  On appeal, the First Department modified Petitioner's sentence to have the 8⅓-to-25-year term of imprisonment run concurrently with the two 25-year-to-life terms, resulting in an overall indeterminate sentence of 30 years to life, and the court otherwise affirmed.  (*Id.*).

---

[1]   The facts in this Opinion are drawn from Petitioner's Petition ("Pet." (Dkt. #1)), his Amended Petition ("Am. Pet." (Dkt. #13)), Respondent's Opposition Declaration ("Keller Decl." (Dkt. #10)), Respondent's Opposition Brief ("Resp. Opp." (Dkt. #11)), Respondent's Response to Amended Petition ("Resp. Reply" (Dkt. #15)), and Respondent's Supplemental Letter ("Resp. Supp. Letter" (Dkt. #16)).

Petitioner is now serving his sentence at the Facility. (Resp. Opp. 3). He describes the conditions of the Facility during the COVID-19 Pandemic as injurious to his health and violative of his constitutional rights. (Am. Pet. 1). In short, he contends the Facility is "not built for this type of pandemic." (*Id.* at 2). For example, he alleges that "inmates['] cells are so close to each other that when someone coughs or sneezes[, an individual will be infected]." (*Id.*). He further notes that inmates are not wearing masks, gloves, or other Personal Protective Equipment. (*Id.*). "Bars[,] gates[,] and doors are all open[;] there is nowhere to run or hide from this pandemic in this type of prison setting." (*Id.* at 3).

Petitioner is 61 years old and contends that his high blood pressure and "diabetes-related complications" place him at a greater risk of contracting COVID-19 and experiencing severe illness or death. (Pet. 1; Am. Pet. 2). As a result of these conditions, Petitioner seeks "immediate[ ] release" due to the "special danger posed to inmates by the current public health crisis." (Am. Pet. 2, 3). According to Respondent, Petitioner will not be eligible for parole until 2026. (Resp. Opp. 5 (referring to Department of Corrections and Community Supervision Inmate Lookup, DIN 97-A-5198)).

**B.   Procedural Background**

On April 4, 2020, Petitioner filed his first Petition, seeking release from custody. (Dkt. #1). On April 17, 2020, the Court directed Respondent to answer the Petition and provide the Court with copies of state court transcripts and briefs relating to Petitioner's 1997 New York County conviction. (Dkt. #4).

3

On May 5, 2020, Respondent filed a declaration and a memorandum of law in opposition to the Petition. (Dkt. #10-11). Respondent provided Appellate Division briefs and state court decisions relating to Petitioner's 1997 New York County conviction, but he was unable to include trial transcripts or Petitioner's application to the New York Court of Appeals for leave to appeal due to the age of the case. (Dkt. #12; *see also* Dkt. #10).

Thereafter, Petitioner filed his Amended Petition, dated April 25, 2020, and received by the Court on May 11, 2020, asking the Court for immediate release based on the spread of COVID-19. (Dkt. #13). He designated his request as an "emergency extraordinary circumstances writ of habeas corpus [under] § 2254(a)," alleging that his confinement "violat[ed his] 5th, 6th, 8th, and 14th Amendment[ ]" rights. (*Id.* at 1). The Court endorsed the Amended Petition on May 12, 2020, noting that it would review both the Petition and Amended Petition because of Petitioner's *pro se* status. (Dkt. #14). The Court also invited Respondent to file a supplemental response to the Amended Petition. (*Id.*). On May 21, 2020, Respondent answered, and opposed, the Amended Petition. (Dkt. #15). On June 25, 2020, Respondent submitted a Supplemental Letter in further opposition to the Petition. (Dkt. #16).

## DISCUSSION

Petitioner requests immediate release from state custody due to his potential exposure to COVID-19 while in prison. The Court is cognizant of the threats posed by the COVID-19 pandemic, particularly to inmates who present with a higher risk for contracting the virus. However, Respondent raises both

4

procedural and merits-based challenges.  The Court here focuses on two putative procedural deficiencies: (i) whether Petitioner should have pursued his claims under 42 U.S.C. § 1983 rather than 28 U.S.C. § 2254 and (ii) whether Petitioner exhausted his claims in state court.  Because it resolves the Petition on procedural grounds, the Court does not address its merits.

The Court is obliged to construe *pro se* pleadings liberally, *Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).  At the same time, Petitioner's *pro se* status "does not exempt [him] from compliance with the relevant rules of procedural and substantive law." *Traguth* v. *Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotations omitted).  After liberally construing the Petition and Amended Petition in light of the "special solicitude" due to *pro se* litigants, *see Tracy* v. *Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010), the Court finds that Petitioner has failed to exhaust his claims, and therefore dismisses this action without prejudice.

**A.     The Court Declines to Dismiss the Petition Because It Brings Claims Under 28 U.S.C. § 2254**

Respondent argues first that the Petition and Amended Petition should be dismissed because Petitioner's claims, which "turn[ ] on circumstances of confinement," are not properly brought in a 28 U.S.C. § 2254 petition, but should have been brought as a civil rights action pursuant to 42 U.S.C. § 1983.

(Resp. Supp. Letter 1 (quoting Order dated June 4, 2020, *Kielly* v. *Fitzpatrick*, No. 20-1496 (2d Cir.), Dkt. #20). The Court declines to dismiss the Petition on these grounds.[2]

While Respondent is correct that "requests for relief turning on circumstances of confinement *may* be presented in a § 1983 action," *Muhammad* v. *Close*, 540 U.S. 749, 750 (2004) (emphasis added), courts in this Circuit have concluded that "it is not clear that § 1983 is the *sole* remedy for all claims addressing conditions of confinement," *Elleby* v. *Smith*, No. 20 Civ. 2935 (PAE), 2020 WL 2611921, at *2 (S.D.N.Y. May 22, 2020). On the one hand, a petition that seeks release due to a constitutional defect clearly falls within § 2254. *See, e.g.*, *Leyra* v. *Denno*, 347 U.S. 556, 562 (1954). On the other hand, a petition protesting against prison conditions but not seeking release clearly falls within § 1983. *See generally Cooper* v. *Pate*, 378 U.S. 546 (1964).

District courts around the country have been split as to whether habeas corpus is a proper vehicle for challenges to prison conditions that seek release from custody based on COVID-19. *See Elleby*, 2020 WL 2611921, at *3 (acknowledging split). Some courts have determined that petitioners should bring a suit under § 1983, insofar as the claims implicate conditions of confinement rather than the legality of the underlying conviction. *See, e.g.*, *Drakos* v. *Gonzalez*, No. 20 Civ. 1505 (LHR), 2020 WL 2110409, at *1

---

[2]   Because Petitioner is proceeding *pro se*, the Court notes at the outset that his Petition is held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes* v. *Rowe*, 449 U.S. 5, 9 (1980) (per curiam). "If a *pro se* litigant pleads facts that would entitle him to relief, that petition should not be dismissed because the litigant did not correctly identify the statute or rule of law that provides the relief he seeks." *Thompson* v. *Choinski*, 525 F.3d 205, 209 (2d Cir. 2008).

6

(S.D. Tex. May 1, 2020) ("[Petitioner] does not challenge the fact or duration of his confinement. While he requests injunctive relief ordering his release, his attack is on the conditions of his confinement, not on the fact that he was ordered detained.... Therefore, the relief [he] seeks is not available in habeas corpus."); *Phea* v. *Pfeiffer*, No. 20 Civ. 283 (WBS) (GGH), 2020 WL 1892427, at *1 (E.D. Cal. Apr. 16, 2020) ("Although petitioner's request argues the current prison conditions expose him to a higher risk of harm due to potential exposure to COVID-19, petitioner's request relates to the conditions of petitioner's confinement and accordingly is more appropriately brought pursuant to 42 U.S.C. § 1983.").

However, courts in this Circuit have considered and rejected the argument that § 1983 is the *sole* remedy available to a petitioner in state custody who seeks release due to conditions of confinement; instead, these courts have found that a petitioner may obtain such relief by bringing a petition for writ of habeas corpus under § 2254. *See, e.g., Steward* v. *Wolcott*, No. 20 Civ. 6282 (FPG), 2020 WL 2846949, at *4 n.5 (W.D.N.Y. June 2, 2020) (holding that "[p]etitioner's claim regarding his conditions of confinement must be brought under Section 2254," and that § 1983 was unavailable to petitioner because he sought release from custody and no other relief); *Llewellyn* v. *Wolcott*, No. 20 Civ. 498 (JLS), 2020 WL 2525770, at *4 (W.D.N.Y. May 18, 2020) ("[Petitioner] alleges that the conditions of his confinement render his custody unconstitutional.... But he does not seek an order directing prison or state officials to improve or correct any alleged deficiencies in those conditions;

7

he seeks only immediate release from physical custody.... Accordingly, [petitioner's] claims fall 'squarely within th[e] traditional scope of habeas corpus.'" (internal citations omitted)); *see also Preiser* v. *Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

Despite Respondent's arguments to the contrary, the Second Circuit's two-paragraph disposition in *Kielly* does not resolve the split. In *Kielly*, the Second Circuit denied the petitioner's motion to file a successive § 2254 petition, but transferred the petition to the Northern District of New York to consider any claims "concerning the lawfulness of Petitioner's current conditions of confinement, such as one properly brought pursuant to 42 U.S.C. § 1983." No. 20-1496, Dkt. #20 (2d Cir. Jun. 4, 2020). As other courts in this Circuit have recognized, in factual circumstances analogous to the ones in this case, "the Second Circuit's disposition in *Kielly* does not, as Respondent suggests, stand for the proposition that a habeas petition is an improper vehicle for a conditions of confinement claim seeking release; instead, the court merely directed the district court to examine, in the first instance, whether the petition in that case had set forth a valid conditions of confinement claim." *Steward*, 2020 WL 3574617, at *2. Therefore, contrary to Respondent's argument, the Second Circuit did not conclude that a habeas petition is an improper vehicle for such claims.

Here, Petitioner has a strong claim that § 2254 is a viable source of relief. Although he only challenges his conditions of confinement rather than his conviction, Petitioner seeks "immediate[ ] release" from state custody. (Am. Pet. 3). However, because it is an unresolved legal question whether a habeas petition is a proper vehicle to seek release from state custody due to challenges to prison conditions during the COVID-19 pandemic, the Court declines to dismiss the Petition on these grounds. When there is an "independent infirmity" with Petitioner's habeas petition, such as the exhaustion requirement here, the Court may reserve judgment on the legal question. *Elleby*, 2020 WL 2611921, at *3.

### B.     Petitioner Has Failed to Exhaust His State Court Remedies

Alternatively, Respondent argues that the Petition should be dismissed because Petitioner has failed to exhaust his claims in state court. (Resp. Supp. Letter 2). This argument, as it turns out, has more traction. As the Second Circuit previously explained, under § 2254, a petitioner for a writ of habeas corpus is "generally require[d] … to show that he has 'exhausted the remedies available in the courts of the State' in order for the writ to be granted." *McCray* v. *New York*, 573 F. App'x 22, 23 (2d Cir. 2014) (summary order) (quoting 28 U.S.C. § 2254(b)(1)(A)); *see also O'Sullivan* v. *Boerckel*, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."). To exhaust state remedies, a petitioner must "fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged

9

violations of its prisoners' federal rights." *McCray*, 573 F. App'x at 23 (quoting *Carvajal* v. *Artus*, 633 F.3d 95, 104 (2d Cir. 2011)).

Here, Petitioner has a state petition pending before Sullivan County Supreme Court Justice Stephan G. Schick, pursuant to Article 70 of the New York Civil Practice Laws and Regulations ("CPLR"). (Resp. Opp. 9; Keller Decl. ¶ 2). Under CPLR Article 70, state prisoners may petition for a writ of habeas corpus in state court to "inquire into the cause of [his or her] detention and for deliverance." CPLR 7002(a). Petitioner's state habeas petition was returnable before Justice Schick on June 29, 2020. (Resp. Reply 1 n.1). On July 8, 2020, Justice Schick dismissed Petitioner's state court habeas petition. *See Slater* v. *Keyser*, Index No. 2020/622, Motion #4, (N.Y. Sup. Ct. Sullivan Cty. July 8, 2020). The docket in that case reveals that Petitioner has not yet appealed the dismissal of his state court petition, which he is entitled to do under CPLR 7011.

Since Petitioner's Article 70 petition has yet to be appealed to an appellate court, he has not exhausted all available state remedies, and this Court is unable to consider the Petition. *See Daye* v. *Attorney Gen. of N.Y.*, 696 F.2d 186, 190 n.3 (2d Cir. 1982) ("Exhaustion of available state remedies requires presentation of the claim to the highest state court from which a decision can be had."); *see also Elleby*, 2020 WL 2611921, at *3 ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his

10

federal claims 'to the highest court of the pertinent state.'" (quoting *Bossett* v. *Walker*, 41 F.3d 825, 828 (2d Cir. 1994)).[3]

Nor does an exception to the exhaustion requirement apply here. Courts may waive the exhaustion requirement only under two narrow exceptions: (i) if "there is an absence of State corrective process," 28 U.S.C. § 2254(b)(1)(B)(i), or (ii) if "circumstances exist that render such process ineffective to protect the rights of the applicant," *id.* § 2254(b)(1)(B)(ii). These exceptions are met "[w]here there is no further state proceeding for petitioner to pursue," or "where further pursuit would be futile." *Elleby*, 2020 WL 2611921, at *4 (quoting *Lurie* v. *Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)).

Petitioner has not demonstrated that the state remedies he is seeking would be unavailable or ineffective, or that the state corrective process is so deficient that efforts to perfect his state court petition are futile. Although Petitioner argues that the exhaustion requirement "can be waived in light of the extraordinary threat posed — in his unique circumstances — by [ ] COVID-19" (Am. Pet. 1), the Court is not convinced. At best, the Court interprets this statement as Petitioner arguing that exhaustion would be futile, and the process is incapable of granting adequate relief. However, as Respondent argues, the very fact of Petitioner's petition to Sullivan County Supreme Court "effectively concedes the availability of a remedy in state court." (Resp.

---

[3] In New York, a petitioner may exhaust his claims by filing a direct appeal to the relevant Appellate Division and seeking leave to appeal to the New York Court of Appeals. *Olsen* v. *Doldo*, No. 16 Civ. 5366 (RA) (DF), 2020 U.S. Dist. LEXIS 1009, 2020 WL 685707, at *16 (S.D.N.Y. Jan. 2, 2020), *report and recommendation adopted*, No. 16 Civ. 5366 (RA), 2020 U.S. Dist. LEXIS 23756, 2020 WL 635605 (S.D.N.Y. Feb. 11, 2020)).

Opp. 10). Indeed, courts across New York State have considered and resolved petitions seeking release from state custody in connection with the COVID-19 pandemic. *See, e.g.*, *People ex rel. Squirrell* v. *Langley*, Index No. 500451/2020 (VGG), 2020 WL 2736623, at *11 (N.Y. Sup. Ct. Putnam Cty. May 25, 2020) (dismissing habeas corpus petitions by inmates seeking release during the COVID-19 pandemic because petitioners failed to establish that prison officials' actions violated their constitutional health rights); *People ex rel. Gregor* v. *Reynolds*, 124 N.Y.S.3d 118, 124-25 (N.Y. Sup. Ct. Essex Cty. 2020) (granting two inmates' Article 70 petitions for release because the court concluded that the sheriff's failure to take adequate protective measures violated the due process rights of one inmate who was vulnerable to COVID-19).

Moreover, the exhaustion requirement is especially appropriate where, as here, there is value to giving the New York State courts a first opportunity to adjudicate Petitioner's claim. *See Elleby*, 2020 WL 2611921, at *5; *see also Rose* v. *Lundy*, 455 U.S. 509, 515 (1982) ("[A]s a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act."). Like *Elleby*, Petitioner here brings claims of unconstitutionality, generally contending that COVID-19 poses "special danger" to all inmates. (Am. Pet. 1-2). He further proffers that inmates in some prison systems, including Rikers Island, have been released from custody due to the pandemic. As a sister court in this District noted, "[t]here is value to giving the New York state courts a first opportunity to evaluate such a claim, and develop a full factual record, particularly given the

12

rapidly changing conditions in prisons and the evolving steps that prisons are taking to meet the unprecedented challenges presented by the pandemic." *Elleby*, 2020 WL 2611921, at *5. State prison systems are in the best position to evaluate specific inmates' medical conditions and risks of contracting the virus, and additionally determine whether release pursuant to available state prison laws is warranted. *See id.; Macaluso* v. *Keyser*, No. 18 Civ. 4830 (RRM), 2020 U.S. Dist. LEXIS 68642, at *4 (E.D.N.Y. Apr. 17, 2020). Accordingly, the Court agrees that the Petition must be dismissed, without prejudice, so that Petitioner may pursue his appropriate remedies in the state forum.

## CONCLUSION

For the foregoing reasons, Petitioner's habeas petition is dismissed without prejudice to its refiling once he has exhausted his claims in state court. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: July 15, 2020
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*Sent by First Class Mail to:*
Marvin Slater
97-A-5198
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, NY 12733